UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YOLANDA ARCENEAUX,

       Plaintiff,

    v.

MARIN HOUSING AUTHORITY,

       Defendant.

Case No.  15-cv-00088-MEJ

**ORDER RE: MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

Re: Dkt. No. 27

## INTRODUCTION

Defendant Housing Authority of the County of Marin[1] ("Defendant") moves to dismiss Plaintiff Yolanda Arceneaux's ("Plaintiff") First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim. Dkt. No. 27. Plaintiff has filed an Opposition (Dkt. No. 28), and Defendant filed a Reply (Dkt. No. 29). The Court finds this matter suitable for disposition without oral argument and VACATES the June 25, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendant's motion for the reasons set forth below.

## BACKGROUND

### A.    Factual Background

Near the end of 2009, Plaintiff moved into an apartment at 315 Drake Avenue, part of a public housing unit at Golden Gate Village in Marin City, California. First Am. Compl. ("FAC") ¶¶ 4, 12, Dkt. No. 26. Defendant was the property manager for the unit. *Id.* In or around February 2010, Plaintiff's daughter was attacked by three women who were aware the family were

---

[1] Named as Marin Housing Authority in Plaintiff's First Amended Complaint.

newcomers to Marin City. *Id.* ¶ 5. Plaintiff reported this incident to the police and notified Defendant about the incident by phone. *Id.* In March 2010, Plaintiff's daughter was attacked by the same group of women; Plaintiff reported this incident to the Marin County Sheriff and again notified Defendant by telephone. *Id.* ¶ 6. In June 2010, Plaintiff's daughter was attacked by a crowd of people that contained some of the same people involved in previous attacks. *Id.* ¶ 7. Plaintiff reported this incident to the Marin County Sheriff and to Defendant by phone. *Id.* Later that summer, Plaintiff's daughter was attacked near her residence. *Id.* ¶ 8. Plaintiff reported this incident to the Sheriff and to Defendant by phone. *Id.* On an unspecified date, Plaintiff had a meeting with Defendant and Pastor Marcus Small in response to these incidents. *Id.* ¶ 9.

On or about July 26, 2012, six gunshots were fired at Plaintiff's residence. *Id.* ¶ 10. Plaintiff reported this incident in person to Defendant and requested a change in residence out of fear for her personal safety. *Id.* Defendant reported to the Marin Independent Journal on or about August 2, 2012 that they were taking "the incident seriously." *Id.* ¶ 11. On August 16, less than a month after the shooting, Carroll sent a memo to Plaintiff providing two housing applications to complete, but she emphasized the options were not immediate and that Defendant lacked any immediate housing alternatives. *Id.* ¶ 12. Plaintiff alleges that past residents received housing transfers for events less violent than the July 2012 shooting. *Id.*

In January 2013, Plaintiff's son, who came to visit Plaintiff to celebrate his 17th birthday, was killed by gunfire near her residence at Golden Gate Village. *Id.* ¶ 13. This incident received extensive coverage in the Marin Independent Journal. *Id.* Sometime in early 2013, Defendant sent a representative to help Plaintiff fill out paperwork to relocate. *Id.* ¶ 14. Defendant issued Plaintiff a housing voucher in March 2013. *Id.* ¶ 15. However, in or around June 2013, Defendant took back the voucher and did not locate or obtain emergency or alternative housing for Plaintiff and her family. *Id.* ¶¶ 16, 18. Instead, Plaintiff alleges that Defendant revoked her Section 8 voucher on November 4, 2013 and initiated eviction proceedings against her on July 18, 2014. *Id.* ¶¶ 19-20. She alleges that Defendant proceeded with the eviction despite a court-ordered stay against the eviction, issued on August 13, 2014. *Id.* ¶ 21.

**B.      Procedural Background**

1    Plaintiff filed her initial Complaint in this matter on January 8, 2015.  Dkt. No. 1.  She

2    alleged three causes of action: (1) negligence, (2) retaliation, and (3) wrongful death.  *Id.* ¶¶ 17-28.

3    In the jurisdiction portion of her Complaint, Plaintiff alleged: "This is, in part, an action

4    authorized and instituted pursuant to 42 U.S.C. Section 1983."  *Id.* ¶ 1.  On February 25, 2015,

5    Defendant moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure

6    ("Rule") 12(b)(l), on the ground that the Complaint failed to allege grounds for federal subject

7    matter jurisdiction as required by Rule 8(a)(l), and that the Court lacked supplemental jurisdiction

8    over Plaintiff's state law claims.  Dkt. No. 14.  Defendant also sought dismissal under Rule

9    12(b)(6), arguing that Plaintiff's Complaint failed to state a claim for violation of 42 U.S.C. §

10   1983 because she did not identify a specific statute or regulation that provides her a federal

11   enforceable right as a basis for her claim.  In addition, Defendant argued that Plaintiff's state law

12   claims for negligence, retaliation, and wrongful death are barred because public housing

13   authorities have no duty to protect tenants or their guests from criminal acts of third parties in the

14   absence of a dangerous condition of property.  Alternatively, Defendant argued that it is immune

15   from liability under California Government Code section 845.

16       On March 19, 2015, the Court granted Defendant's motion pursuant to Rule 12(b)(6).

17   Order re: Mot. to Dismiss, Dkt. No. 24.  First, as to Plaintiff's federal claim under § 1983, the

18   Court noted that she alleged no specific statute or regulation providing her a federally enforceable

19   right.  *Id.* at 4.  Although not stated in her Complaint, the Court found it possible that Plaintiff was

20   "attempting to bring a substantive due process claim for failure to 'ensure that complaints of

21   harassment and violence were properly handled and the investigation conducted in a fair, impartial

22   and/or non-discriminatory manner.'"  *Id.* at 5 (quoting Compl. ¶ 19).  Accordingly, the Court

23   provided leave to amend.  *Id.* at 6.  However, since the Due Process Clause generally does not

24   require the state to "protect the life, liberty, and property of its citizens against invasion by private

25   actors," *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195 (1989), the Court

26   informed Plaintiff that "the state's failure to protect an individual from 'harms inflicted by persons

27   not acting under color of law' will not ordinarily give rise to § 1983 liability."  Order at 5 (quoting

28   *Huffman v. Cnty. of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998)).  Thus, the Court advised

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1  Plaintiff that she must meet one of two exceptions to the general rule that a public entity's failure

2  to protect an individual from harms by non-governmental actors will not ordinarily give rise to §

3  1983 liability: (1) the special relationship exception; or (2) the danger creation exception. *Id.*

4  (citing *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007)).

5      Second, although not initially alleged in her Complaint, Plaintiff's opposition to

6  Defendant's first motion to dismiss argued that "42 U.S.C. [§] 3617 . . . provide[s] statutory

7  authority to bring a retaliation claim for housing." Opp'n at 9, Dkt. No. 17. Based on this

8  argument, the Court found that Plaintiff was attempting to state a cause of action for retaliation

9  under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-19. Order at 6-7. The Court therefore

10  granted leave to amend if Plaintiff could properly allege a claim for retaliation for exercising any

11  right protected by the FHA. *Id.* at 7.

12      Third, as to Plaintiff's state law claims for negligence and wrongful death, the Court found

13  that Plaintiff did not timely present a government claim as required by the California Tort Claims

14  Act ("CTCA")[2] and failed to make a showing sufficient to grant relief from the timing

15  requirements under California Government Code section 946.6.[3] Order at 7-11. The Court found

16  that Plaintiff had not proffered any evidence demonstrating that she exercised reasonable diligence

17  in either retaining legal counsel to assist her in bringing the claims or conducting her own research

18

19  ────────────────
   [2] The CTCA states that "no suit for money or damages may be brought against a public entity on a

20  cause of action for which a claim is required to be presented . . . until a written claim therefor has
   been presented to the public entity and has been acted upon . . . or . . . deemed to have been

21  rejected. . . ." Cal. Gov't Code § 945.4. Thus, presentation of a written claim, and action on or
   rejection of the claim, are conditions precedent to suit. *State v. Superior Court of Kings Cnty.*

22  *(Bodde)*, 32 Cal. 4th 1234, 1240 (2004). Compliance with the CTCA is an element of the cause of
   action, *id.*, and is therefore required, *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1477 (9th

23  Cir. 1995); "failure to file a claim is fatal to a cause of action[.]" *Hacienda La Puente Unified*
   *Sch. Dist. of L.A. v. Honig*, 976 F.2d 487, 495 (9th Cir. 1992); *City of Stockton v. Superior Court*,

24  42 Cal. 4th 730,738 (2007). Pursuant to California Government Code sections 911.2 and 945.6, a
   claimant must present a claim for personal injury within six months after the accrual of the cause

25  of action.

26  [3] Under California Government Code section 946.6, a would-be claimant may petition a court for
   an order relieving the petitioner from the requirement of section 945.4 to present a timely claim.

27  Section 946.6 requires the petition to "show each of the following: (1) That application was made
   to the board under Section 911.4 and was denied or deemed denied[;] (2) The reason for failure to

28  present the claim within the time limit specified in Section 911.2[; and] (3) The information
   required by Section 910." Cal. Gov't Code § 946.6(b).

1    to determine whether she could bring any claims.  *Id.* at 10-11.  The Court also noted that, even

2    accepting that Plaintiff may be unfamiliar with the legal system and California's tort-claim filing

3    requirements, California courts have previously considered similar arguments and rejected them as

4    a basis for granting relief under section 946.6.  *Id.* at 11.  Accordingly, the Court dismissed

5    Plaintiff's state law claims without leave to amend.

6         On April 9, 2015, Plaintiff filed her FAC, alleging three causes of action: (1) retaliation

7    under the FHA; (2) discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C.

8    § 12181 et seq.; and (3) wrongful death.  FAC ¶¶ 23-30.  Although Plaintiff does not allege a

9    cause of action under 42 U.S.C. § 1983, she once again states in her jurisdiction statement that

10   "[t]his is, in part, an action authorized and instituted pursuant to 42 U.S.C. Section 1983."  *Id.* ¶ 1.

11        On April 30, 2015, Defendant filed the present Motion to Dismiss, arguing that: (1)

12   Plaintiff's § 1983 claim is a sham pleading in an attempt to circumvent the fact that her state law

13   claims are barred as a result of her failure to timely present a government claim under the

14   California Torts Claims Act; (2) her retaliation claim under the FHA fails because Plaintiff does

15   not allege she engaged in activity protected under 42 U.S.C. § 3604, and fails to allege a causal

16   link between protected activity and an adverse action to which she was subjected by Defendant;

17   (3) her claim of discrimination under the ADA fails because Plaintiff's lease of a public housing

18   unit at Golden Gate Village was not a "place of public accommodation" or a "commercial facility"

19   covered under the ADA's disability discrimination laws; and (4) Plaintiff improperly re-alleges a

20   state law claim for wrongful death, as the Court previously dismissed this claim without leave to

21   amend.  Mot. at 1, 3.

22                                    **LEGAL STANDARD**

23        Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a

24   claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a

25   complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."

26   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a

27   "probability requirement" but mandates "more than a sheer possibility that a defendant has acted

28   unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations

United States District Court
Northern District of California

5

1    omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual

2    allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

3    non-moving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

4    2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of

5    sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare Sys.*,

6    534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v.*

7    *Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the

8    basis of a dispositive issue of law.").

9         Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only

10   required to make "a short and plain statement of the claim showing that the pleader is entitled to

11   relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

12   a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

13   "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

14   dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652

15   F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply

16   recite the elements of a cause of action, but must contain sufficient allegations of underlying facts

17   to give fair notice and to enable the opposing party to defend itself effectively").  The court must

18   be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

19   *Iqbal*, 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief . . .

20   [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

21   common sense."  *Id.* at 679.

22        If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

23   request to amend the pleading was made, unless it determines that the pleading could not possibly

24   be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

25   banc) (internal quotation marks and citations omitted).  However, the Court may deny leave to

26   amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of

27   the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

28   prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

United States District Court
Northern District of California

6

amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

**A.    42 U.S.C. § 1983**

Although Plaintiff once again alleges jurisdiction under 42 U.S.C. § 1983, she asserts no cause of action under § 1983 and has not alleged a violation of any federal right.  The Court previously advised her that she must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of state law.  Order at 4 (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  A municipal government entity may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  However, § 1983 does not grant jurisdiction, it only provides a remedy where jurisdiction already exists pursuant to 28 U.S.C. § 1343.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States.  [O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." (internal quotations and citations omitted)).

In order to seek redress through § 1983, a plaintiff must assert the violation of a federal right, not merely a violation of federal law.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citation omitted).  Courts look at three factors when determining whether a particular statutory provision gives rise to a federal right: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) "the statute must unambiguously impose a binding obligation on the States," i.e., "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Id.* at 340-41 (citations omitted).

A district court must construe the complaint in the first instance in order to determine

exactly what rights, considered in their most concrete, specific form, a plaintiff is asserting. *Id.* at 346. Moreover, a court does not look at a statute in its entirety and ask at that level of generality whether rights are created, but instead focuses its analysis on specific statutory provisions. *Id.* at 342. Thus, courts must examine the specific statute and/or regulations identified by a plaintiff to determine if they create a federal right. *Id.* at 342-43; *Legal Servs. of N. Cal., Inc. v. Arnett*, 114 F.3d 135, 138 (9th Cir. 1997).

As in her initial Complaint, Plaintiff's FAC alleges no specific statute or regulation providing her a federally enforceable right under § 1983. As noted above, the Court previously found that Plaintiff may be attempting to bring a substantive due process claim for failure to "ensure that complaints of harassment and violence were properly handled and the investigation conducted in a fair, impartial and/or non-discriminatory manner." Order at 5 (quoting Compl. ¶ 19). However, the Court advised Plaintiff that to state a substantive due process claim, she must show as a threshold matter that a state actor deprived her of a constitutionally protected life, liberty, or property interest. *Id.* (citing *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008)). It warned her that the Due Process Clause generally does not require the state to "protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* (quoting *DeShaney*, 489 U.S. at 195). Consequently, the state's failure to protect an individual from "harms inflicted by persons not acting under color of law" will not ordinarily give rise to § 1983 liability. *Huffman*, 147 F.3d at 1058.

There are two exceptions to the general rule that a public entity's failure to protect an individual from harms by non-governmental actors will not ordinarily give rise to § 1983 liability: (1) the "special relationship" exception; and (2) the "danger creation" exception. *Johnson*, 474 F.3d at 639. When the state has "created a special relationship with a person, as in the case of custody or involuntary hospitalization," courts have imposed liability "premised on an abuse of that special relationship." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992). The danger creation exception requires affirmative conduct by the state, creating a danger that the plaintiff would not have otherwise faced. *Johnson*, 474 F.3d at 641.

The first exception does not apply in this case. Plaintiff does not allege that a "special

8

United States District Court
Northern District of California

relationship" created by state law exists between her and Defendant, and the Court finds that Defendant did not create a special relationship with Plaintiff simply by virtue of her being a public housing tenant or working with her to attempt to find alternative Section 8 housing.

As to the second exception, there is no indication that Defendant's affirmative actions placed Plaintiff's liberty or property in more danger than already existed. Plaintiff alleges that Defendant failed to act as a result of her incident reports. FAC ¶¶ 5-10, 13. At most, these allegations show that Defendant left Plaintiff in a living situation in which her family was not safe from third parties. However, even if the Court were to accept this allegation for the proposition that Defendant somehow acted with deliberate indifference, it is misplaced in light of the Supreme Court's holding that the Due Process Clause is not a guarantee of safety and security. *DeShaney*, 489 U.S. at 195. In *DeShaney*, the Court held that

> nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*Id.* Such inaction on Defendant's part does not rise to the level of affirmatively placing Plaintiff in a position of danger. *Compare Penilla v. City of Huntington Park*, 115 F.3d 707, 708-09, 711 (9th Cir. 1997) (per curiam) (danger creation exception applicable where man died of respiratory failure after police locked him in his house and cancelled a neighbor's 911 request for emergency services ); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1057-58 (9th Cir. 2006) (plaintiff killed by neighbor after reporting neighbor for molestation; danger creation exception applicable because police officer assured the plaintiff he would notify her prior to contacting the neighbor and then confronted neighbor without notifying her).

As there is no indication that Defendant affirmatively placed Plaintiff's liberty or property in danger, Plaintiff cannot state a claim under § 1983. The Court previously granted Plaintiff leave to amend to correct this deficiency, yet she still does not allege facts showing either of the two exceptions to the general rule that a public entity's failure to protect an individual from harm

9

by non-governmental actors will not ordinarily give rise to § 1983 liability.  Accordingly, the Court GRANTS Defendant's Motion to Dismiss as to Plaintiff's § 1983 claim WITHOUT LEAVE TO AMEND.

**B.      FHA**

Plaintiff alleges that she "engaged in protected activity by reporting the violence committed against her family to the Defendant and speaking out in the local press about the situation." FAC ¶ 24.  As a result, she alleges that Defendant retaliated against her by "revoking her Section 8 voucher and commencing eviction proceedings against her" in violation of the FHA. *Id.* ¶ 25.  She maintains that the "stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus." *Id.*  Defendant argues that reporting violence committed against Plaintiff's family and speaking out in the local press about the situation do not constitute protected activity under the FHA.  Mot. at 6.

The FHA prohibits discrimination in the rental or sale of housing, 42 U.S.C. § 3604, and makes it unlawful "to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected" by the FHA, 42 U.S.C. § 3617.  To state a claim for retaliation under the FHA, Plaintiff must show: (1) she engaged in protected activity; (2) Defendant subjected her to an adverse action; and (3) a causal link between the protected activity and the adverse action.  *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) (citations omitted).

The protected categories pertaining to rental housing set forth in the FHA are race, color, religion, sex, handicap (or disability), familial status, and national origin.  42 U.S.C. § 3604. Plaintiff does not state which protected category applies in this case, instead alleging retaliation for reporting the violence committed against her family and speaking out in the local press about the situation.  FAC ¶ 24.  Courts have applied section 3617 of the FHA to violent or threatening conduct designed to drive individuals out of their homes.  *See, e.g.*, *Ohana v. 180 Prospect Place Realty Corp.*, 996 F. Supp. 238, 239 (E.D.N.Y. 1998) (tenants permitted to bring action against two neighbors who engaged in harassing and intimidating conduct, holding that the FHA "not only protects individuals from discrimination in the acquisition of their residences because of race,

color, religion, sex, familial status, or national origin, but also protects them from interference by their neighbors for such discriminatory reasons in the peaceful enjoyment of their homes."); *Stirgus v. Benoit*, 720 F. Supp. 119, 123 (N.D. Ill. 1989) (finding sufficient the plaintiff's allegations that the defendants firebombed her home to intimidate and scare her out of the neighborhood).  However, Plaintiff's case is distinguishable because she brings this case against the Housing Authority, not the actors that committed the harassing and intimidating behavior.  The Court is unaware of any authority, and Plaintiff provides none, establishing that reporting violence committed by third parties constitutes a "protected activity" under the FHA.  The FHA protects against discrimination in the sale or rental of housing, but only where the discrimination is on the basis of race, color, religion, sex, familial status, or national origin.  42 U.S.C. § 3604; *see also Atterbury v. Sanchez*, 2012 WL 3638571, at *5 (N.D. Cal. Aug. 22, 2012) (dismissing FHA claims where defendants' wrongful actions occurred because of the plaintiff's complaints, not his disability); *Visintini v. Hayward*, 2009 WL 2413356, at *4 (N.D. Cal. Aug. 5, 2009) (dismissing complaint where plaintiff alleged the defendant acted on the basis of her personal dislike of plaintiff, not on the basis of any of the above protected grounds).

Accordingly, the Court GRANTS Defendant's Motion to Dismiss as to Plaintiff's FHA claim WITHOUT LEAVE TO AMEND.

**C.     ADA**

Plaintiff alleges that Defendant's actions constitute discrimination under the ADA in light of her status as a person with a disability at the time the eviction process was commenced.  FAC ¶ 27.  Defendant argues that Plaintiff's lease of a public housing unit at Golden Gate Village was not a place of public accommodation covered under the ADA's disability discrimination laws.  Mot. at 7.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a). Section 12181(7)(A) includes within the definition of public accommodation "an inn, hotel, motel,

11

United States District Court
Northern District of California

1   or other place of lodging." 42 U.S.C. § 12181(7)(A). However, apartment complexes do not

2   constitute "public accommodations" within the meaning of the ADA. *See Indep. Hous. Servs. of*

3   *S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 & n.14 (N.D. Cal. 1993) (finding that "the

4   legislative history of the ADA clarifies that 'other place of lodging' does not include residential

5   facilities" such as apartments and condominiums); *Smith v. Powdrill*, 2013 WL 5786586, at *11

6   (C.D. Cal. Oct. 28, 2013) ("[T]he ADA's reasonable accommodations requirement does not

7   extend to residential housing."); *McColm v. Anber*, 2006 WL 3645308, at *5 (N.D. Cal. Dec. 12,

8   2006) ("residential portions of housing developments do not fall within the bounds of the ADA").

9   Thus, because the Golden Gate Village Apartments are not subject to ADA compliance, Plaintiff

10   may not maintain suit against Defendant for alleged ADA violations related to her housing there.

11           In addition, because she is unable to allege a claim of discrimination under the ADA,

12   Plaintiff also cannot assert a claim of retaliation "because she has 'opposed any act or practice

13   made unlawful' by the ADA, 42 U.S.C. § 12203(a); or a claim of interference, coercion, or

14   intimidation in the 'exercise or enjoyment of, or on account of . . . having exercised or enjoyed . . .

15   any right granted or protected' by the ADA, *id.* § 12203(b)." *McColm*, 2006 WL 3645308, at *5.

16   Accordingly, Plaintiff's ADA claim is DISMISSED WITHOUT LEAVE TO AMEND.

17   **D.**     **Wrongful Death**

18           Despite the Court's previous Order dismissing all state law claims without leave to amend,

19   Plaintiff re-alleges her wrongful death claim. FAC ¶¶ 28-30. As noted above, Plaintiff's state law

20   claim for the wrongful death of her son is barred because she failed to timely present the claim

21   within six months as required by the California Tort Claims Act (Cal. Gov't Code §§ 911.2 and

22   945.6), and failed to demonstrate by a preponderance of the evidence that her failure to present

23   Defendant with her tort claim was the result of excusable neglect so as to grant relief under

24   California Government Code section 946.6. Accordingly, the Court STRIKES Plaintiff's

25   wrongful death claim.

26

27                               **CONCLUSION**

28           Based on the analysis above, the Court **GRANTS** Defendant's 12(b)(6) Motion

1    **WITHOUT LEAVE TO AMEND**.  The Clerk of Court shall close the file.

2         **IT IS SO ORDERED.**

3

4    Dated: May 26, 2015

5    _____

6    MARIA-ELENA JAMES
     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

13